UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOYCE WILSON,

                Plaintiff,            **DECISION AND ORDER**
                                                    **6:16-cv-06509-MAT**
  -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

---

## INTRODUCTION

Represented by counsel, Joyce Wilson ("Plaintiff") instituted this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

Plaintiff filed for DIB on March 7, 2013, alleging disability beginning on September 16, 2004, due to a back injury and high blood pressure. (T.31, 129, 131, 152). Following the denial of the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

-1-

claim at the initial level, Plaintiff requested a hearing. (T.76-78, 80, 84-90).[2] On November 12, 2014, a hearing was conducted by administrative law judge Connor O'Brien ("the ALJ"). Plaintiff appeared with her attorney and testified, as did impartial vocational expert Julie A. Andrews ("the VE"). (T.27-70). On February 24, 2015, the ALJ issued a decision finding Plaintiff not disabled during the period beginning September 16, 2004, the alleged onset date, and ending December 31, 2006, the date last insured. (T.12-26). The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T.1-4). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is affirmed.

**THE ALJ'S DECISION**

The ALJ followed the five-step sequential evaluation procedure established by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520.

---

[2] Numerals preceded by "T." in parentheses refer to pages from the certified administrative transcript in this matter.

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2006, and that she has not engaged in substantial gainful activity ("SGA") during the relevant period, given the absence of earnings records for this time.

At step two, the ALJ determined that Plaintiff has the following "severe" impairments: degenerative disc disease in the lumbar spine, with herniation and hip pain; and obesity. The ALJ found that Plaintiff's high blood pressure and hypercholesterolemia were not "severe" impairments because the high blood pressure was controlled with medication, and only conservative treatment (e.g., weight loss and dietary changes) was recommended for the hypercholesterolemia. The ALJ declined to find Plaintiff's alleged loss of bladder control to be a "severe" impairment because it has not been diagnosed by any treating sources, and she did not seek treatment for it. Finally, the ALJ determined that Plaintiff's headaches were not "severe" because Plaintiff noted improvement of them without treatment.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ gave particular consideration to Listing 1.04, but determined that the record did not contain evidence of the requisite nerve root compression,

spinal arachnoiditis, or lumbar spinal stenosis; nor did it contain evidence that Plaintiff's back disorder has resulted in an inability to ambulate effectively. At most, the ALJ noted, Plaintiff has displayed some difficulty rising out of her chair and a stiff gait, but she has retained functioning in her legs and is able to ambulate independently without an assistive device.

Prior to proceeding to step four, the ALJ assessed Plaintiff has having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain limitations. Specifically, Plaintiff is limited to lifting up to 15 pounds occasionally and 10 pounds frequently; she requires a sit/stand option that allows her to change position every 60 minutes for up to 5 minutes at a time, without leaving the work station; she cannot work overhead; she cannot bend or stoop to the floor; and she can occasionally crouch, balance on narrow, slippery or moving surfaces, climb, kneel, and crawl.

At step four, the ALJ discussed Plaintiff's past relevant work ("PRW") as a nurse assistant (DOT #355.674-014), which the VE classified as medium, semi-skilled work (SVP 4). Plaintiff also had PRW as a psychiatric aide (DOT #355.377-014), which is medium, semi-skilled work (SVP 4). Within the last 15 years, Plaintiff performed them at the SGA level, and for a long enough period for her to learn the skills associated with each job. Because both positions are performed at an exertional level greater than

Plaintiff's RFC, the ALJ concluded that Plaintiff is unable to perform her PRW.

As of the date last insured, Plaintiff was a "younger individual age 18-49," according to the Regulations. She had only a limited education, having left school in the 9th grade and failed to obtain an equivalency diploma. The ALJ relied on the VE's testimony to find that Plaintiff could perform representative occupations such as counter clerk (DOT #249366-010, light, unskilled (SVP 2), 108,649 jobs in the national economy) and small product assembly I (DOT #706.684-022, light, unskilled (SVP 2), 368,669 jobs in the national economy). Accordingly, the ALJ entered a finding of not disabled.

**SCOPE OF REVIEW**

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler,

748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

**DISCUSSION**

**I. Failure to Discuss Certain Medical Records**

Plaintiff contends that the ALJ "failed to mention, weigh, or explain the medical opinion evidence" of orthopedic surgeon Dr. Elias M. Nicolas, who opined that Plaintiff "must avoid repetitive work[.]" (Pl's Mem. at 17 (quoting T.400)). As an initial matter, the Court notes that Dr. Nicolas made this statement during 2001, which was well before the disability onset date of September 16, 2004. A claimant's physician is generally not considered a treating source for purposes of applying the treating physician's presumption of deference if the physician only treated the claimant before the relevant period. See Monette v. Astrue, 269 F. App'x 109, 112–13 (2d Cir. 2008) (unpublished opn.) ("Monette argues that the ALJ was required to give controlling weight to Dr. Huckell's retrospective opinion under the treating physician rule described in 20 C.F.R. § 404.1527(d). This argument is unavailing because Dr. Huckell, who first saw Monette in 2000, was not a treating physician during the period in contention.") (citing Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) (finding that where the

-6-

claimant's claim depended on showing continuous disability from 1977–1980, a doctor who treated him several times in 1974 and 1975, and once in 1987, was not a "treating physician" within the meaning of the rule) (internal quotations and citations from Arnone omitted); internal citation omitted).

Plaintiff also has cherry-picked one phrase out of Dr. Nicolas's statement, which, when read in context, is not supportive of Plaintiff's assertion that she is totally disabled. On November 27, 2001, Dr. Nicolas indicated that Plaintiff can

> [o]nly lift 5 to 10 pounds and must avoid repetitive work, bending, stooping and squatting but is able to work in a sedentary position with these restrictions if she is given the ability to stretch and move around as necessary.

T.400. It is clear that Dr. Nicolas did not mean that Plaintiff was required to avoid *all* types of repetitive work, but rather was precluded from work involving repetitive bending, stooping and squatting. The ALJ's RFC assessment is not inconsistent with Dr. Nicolas's statement since the ALJ included a limitation of no bending or stooping, and only occasional[3] crouching.

Finally, Plaintiff argues that the ALJ failed to consider independent medical examiner and orthopedic surgeon Dr. Eugene J.

---

[3] SSR 83-10 defines "occasionally" as "occurring from very little up to one-third of the time[,]" i.e., "no more than about 2 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

Coyle's notation of "severe straight leg raise" on November 3, 2002. (T.347). As was the case with Dr. Nicolas, Dr. Coyle's statement regarding Plaintiff's condition was made prior to the relevant period, and Dr. Coyle is not considered a treating source for purposes of the treating physician's rule of deference. Furthermore, positive straight leg raising test results, standing alone, does not establish Listing 1.04(A) where the injury involves the lower back; rather, the claimant must also have nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. See 20 C.F.R. Pt. 404, Subpt. P., Appx. 1, § 1.04(A). The ALJ specifically considered this Listing and found no evidence of the requisite nerve root compression, a finding that Plaintiff does not contest on appeal.

Plaintiff also faults the ALJ for failing to mention that independent medical examiner and orthopedic surgeon Dr. Richard Byrne "noted 'numbness, tingling weakness and loss of bladder control.'" (Pl's Mem. at 17 (quoting T.290 [sic])). The quotation actually appears on T.291, under the heading "Current Complaints," and reads as follows: "She reports numbness, tingling and weakness in her lower back. She notes some loss of control of bladder, but not bowel." (T.291). Contrary to Plaintiff's intimation, Dr. Byrne did not diagnose loss of bladder control; rather, he was simply

recording Plaintiff's subjective complaints. Moreover, Plaintiff never sought treatment for the alleged loss of bladder control, which suggests that the condition was not as severe or debilitating as she alleges. See Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008) (unpublished opn.) ("[T]he ALJ appropriately relied on the near absence of any medical records between March 1997 and June 1999 to find that Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition.") (citing Arnone, 882 F.2d at 39).

In short, it is well settled in this Circuit that an ALJ is not required to mention or discuss every single piece of evidence in the record. E.g., Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983). "When, as here, the evidence of record permits [the Court] to glean the rationale of an ALJ's decision, [the Court] do[es] not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Id. (citing Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982)).

## II. Failure to Properly Evaluate Opinions from Physicians Who Treated or Examined Plaintiff

Plaintiff next contends that the ALJ did not properly evaluate the opinions of orthopedists Dr. Terrence M. Daino and Dr. John A. Orsini.

Dr. Daino opined that Plaintiff was "totally disabled" due to

limitations in her ability to sit, stand, and walk. The ALJ gave this opinion "little weight" because he treated Plaintiff in 2001, well before the start of the relevant disability period. Dr. Daino was not entitled to application of the treating physician presumption of deference, since he "was not a treating physician during the period in contention." Monette, 269 F. App'x at 112–13 (citing Arnone, 882 F.2d at 41).

Nevertheless, the ALJ referenced the appropriate regulatory factors to be used when deciding to give a treating physician's opinion less than controlling weight, such as (1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Social Security Administration that tend to support or contradict the opinion. See 20 C.F.R. §§ 404.1527(d)(2)(i)–(ii) & (d)(3)–(6). The ALJ noted that Dr. Daino's "conclusory statements [were] not supported by a function by function analysis," and Dr. Daino himself admitted that he was "not a back surgeon," and therefore he "referred [Plaintiff] to another doctor for further treatment." (Id.). Dr. Daino's opinion "the determination of disability [which] is ultimately reserved for the Commissioner" was, as the ALJ noted, not entitled to any weight. See Snell v. Apfel, 177 F.3d 128, 133–34 (2d Cir. 1999) ("The final

-10-

question of disability is . . . expressly reserved to the Commissioner. Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability. . . .") (internal citation omitted).

With regard to Dr. Orsini, the ALJ noted that he examined Plaintiff on one occasion, in November of 2004. Dr. Orsini was not entitled to the treating physician's presumption of deference for two reasons. First, he "was not a treating physician during the period in contention." Monette, 269 F. App'x at 112–13 (citing Arnone, 882 F.2d at 41). Second, he does not count as a "treating physician" because he did not have a longitudinal treating relationship with Plaintiff. See 20 C.F.R. § 404.1502 (eff. until Mar. 26, 2017) ("Treating source means your own physician . . . who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. . . ."); Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (unpublished opn.) (finding that when a physician has only examined a claimant once or twice, "his or her medical opinion is not entitled to the extra weight of that of a treating physician"). The ALJ properly considered the appropriate regulatory factors for weighing medical expert opinions from acceptable medical sources such as Dr. Orsini, which are the same as those applied to treating physicians. As the ALJ noted, the

accuracy of Dr. Orsini's opinion was compromised by Plaintiff's refusal to perform some of the requested testing during the examination. Dr. Orsini himself recognized the limitations caused by the fact that "a lot of symptom magnification" was evidence on Plaintiff's part. (T.313). He did not believe he could discern the "the true pathology" of Plaintiff's alleged back pain as shown by the fact that he requested authorization of objective medical tests to locate the "proper area for treatment." (T.313).

In sum, the ALJ's evaluation of Dr. Daino's and Dr. Orsini's opinions reflects a correct application of the relevant legal principles, supported by substantial evidence in the record.

**III. RFC Not Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC assessment was based on a layperson's interpretation of raw medical data and misstatements of fact. Plaintiff faults the ALJ for not drafting the RFC assessment to align perfectly with the opinions of Drs. Orsini and Daino. As the Court has already found, however, the ALJ did not err in declining to give controlling, or even significant weight, to the opinions of Drs. Orsini and Daino. Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is "just made up," Pl's Mem. at 19. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opn.) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of

medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")).

Plaintiff also suggests that the ALJ relied on "the only MRI in the case" that might have been from a different patient. (Pl's Mem. at 22, referring to T.292, 346-47). This argument is unfounded. The MRI that had Plaintiff's name on it, but not Plaintiff's correct birthdate, was taken in 2003. However, the ALJ's decision reflects a reference to a different MRI, taken in 2001. (See T.19, referring to Exhibit 3F, p. 7, or T.207)). The ALJ also noted that "[p]rior MRI results from [Plaintiff]'s worker's compensation case in 2001 note chronic low back pain, degenerative changes at L4-5 and disc protrusion." (T.19, referring to T.207)). Thus, it is clear that the ALJ did not consider the 2003 MRI that Plaintiff contends might have been from a different individual's medical record.

**IV. Erroneous Credibility Assessment**

Plaintiff contends that the ALJ made "misstatements of fact [that] can hardly all be named" in assessing the credibility of Plaintiff's subjective complaints. (Pl's Mem. at 21; see also id. at 22-25). This claim is unfounded.

Plaintiff faults the ALJ for noting that she was "denied further testing." Contrary to Plaintiff's contention, this not a false statement. Plaintiff herself stated to primary care physician Dr. Arthur Pellitieri on January 14, 2005—prior to the relevant disability period—that "[workers] compensation [was] not approving any new studies pending hearing." (T.308). Dr. Pellitieri had previously requested a neurology consultation with EMG/NCV with no response from the Workers Compensation Board; "[a]gain, [he] request[ed] approval [from] compensation carrier for neurology consultation with EMG/NCV studies to rule out lumbar radiculopathy as well as followup MRI per orthopedic recommendations." (T.308). Moreover, the ALJ did not use this fact to draw an adverse inference against Plaintiff; the notation was made in the context of the recitation of Plaintiff's medical history.

Likewise, Plaintiff complains that the ALJ improperly noted that she "did not seek or request the degree of care that her allegations would suggest. [She] never scheduled treatment at a pain center, and discontinued physical therapy (Ex. 1F, p. 12 [(T.188, Plaintiff informed Dr. Pellitieri that she is "not interested in pain center evaluation")]; Ex. 5F [(T.444, Plaintiff "reports minimal improvement [with physical therapy] though able to perform ex's [exercises] [without] noticeable difficulty"]; Ex. 6F [physical therapy records from 4/1/09 to 4/2/09]). [Plaintiff] has also declined epidural injections recommended by Dr. Daino (Ex. 4F,

p. 76 [T.291)])." (T.21).

Again, these are not false statements in the ALJ's decision. Plaintiff *did* decline the epidural injections recommended by Dr. Daino in January of 2002, and Dr. Daino referred her to orthopedic surgeon Paul Maurer, M.D., because Plaintiff was interested in a possible surgical excision. (T.209). However, Plaintiff was informed by Dr. Maurer that she was not a surgical candidate. (T.211). On April 3, 2002, Dr. Daino recommended that she "could be reevaluated by the Pain Center for the epidural injections, but . . . she adamantly refused." (Id.). At that point, Dr. Daino informed her that "her options for work are to be retrained through VESID but she also stated that she was really not interested in pursuing that at this time." (Id.). Also, on September 19, 2003, Dr. Pellitieri noted that Plaintiff "[s]till refuses to consider injections or chiropractic treatment." (T.350). Plaintiff was "not willing to accept anything other than meds and is asking for increased pain meds." (Id.).

"The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citations omitted). The Court recognizes that a claimant's lack of treatment, on its own, is not sufficient to find non-disability. However, the lack of treatment may be considered as a factor in the Commissioner's discrediting of a claimant's allegations. It was

-15-

within the ALJ's discretion to conclude that Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her such as chiropractic treatment, physical therapy, and epidural injections. See, e.g., Valentin v. Colvin, No. 3:16-CV-245(MPS), 2017 WL 923903, at *5 (D. Conn. Mar. 8, 2017) ("The ALJ did not consider anything improper in making her credibility determination. She noted that the [claimant]'s account of her symptoms and limitations was not credible in light of the objective clinical evidence and treatment notes, as she is permitted to under SSR 96-7p.[4] The ALJ considered the clinical evidence and treatment notes that stated that the [claimant] has failed to follow treatment recommendations, as she is allowed to do in assessing credibility.") (citing Navan, 303 F. App'x at 21).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Court affirms the Commissioner's decision denying benefits, grants Defendant's motion for judgment on the pleadings, and denies Plaintiff's motion for

---

[4] "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P, 1996 WL 374186, at *7 (S.S.A. July 2, 1996), superseded by Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016).

judgment on the pleadings. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/ Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: June 30, 2017
Rochester, New York.